### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW MEXICO

MOHAMED DIRIE WARSAME,

      Petitioner,

v.

                              No. 2:26-cv-00430-DHU-JFR

DORA CASTRO, Warden, Otero County Processing
Center, Chaparral, NM, in her official capacity; MARY
DE ANDA-YBARRA, Director, El Paso Field Office,
Immigration and Customs Enforcement, in her official
capacity; KRISTI NOEM, Secretary, U.S. Department
of Homeland Security, in her official capacity; TODD
M. LYONS, Acting Director of U.S. Immigration and
Customs Enforcement, in his official capacity; and
PAMELA BONDI, U.S. Attorney General, in her
official capacity,

      Respondents.

### ORDER GRANTING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS

THIS MATTER is before the Court on Petitioner Mohamed Dirie Warsame's Petition for

Writ of Habeas Corpus ("Habeas Petition"). Doc. 3. Petitioner alleges that he was unlawfully re-

detained by U.S. Customs and Border Protection ("CBP") agents after being paroled, in violation

of the Due Process Clause of the Fifth Amendment.[1] *Id.* ¶¶ 66-107. Petitioner asks this Court to

order his immediate release, or, in the alternative, order Respondents to provide him with an

individualized bond hearing within three (3) days. *Id.* ¶¶ 144-45. Having carefully considered the

parties' briefs, the record, and the relevant law, the Court **GRANTS** Petitioner Mohamed Dirie

---

1 Petitioner also claims that Respondents have re-detained him in violation of their own
regulations, and have violated Article III and the separation of powers between the executive
branch and judicial branch through their executive defiance of judicial authority. *Id.* ¶¶ 108-136.
However, because the Court grants Petitioner's Habeas Petition on his Due Process claim, the
Court "decline[s] to address th[ese] remaining claims of error." *Scott v. Mullin*, 303 F.3d 1222,
1232 (10th Cir. 2002).

Warsame's Petition for Writ of Habeas Corpus.

## I.
## BACKGROUND

1. Petitioner Mohamed Dirie Warsame is a native and citizen of Somalia. *Id.* ¶ 27.

2. In May 2022, Petitioner fled Somalia. *Id.*

3. On December 19, 2022, Petitioner entered the United States near Calexico, California. *Id.* ¶ 28; Doc. 3-1 at 8.

4. Shortly after his entry, Petitioner was apprehended by U.S. Customs and Border Protection ("CBP"). Doc. 3 ¶ 28. CBP took him into immigration custody. *Id.* Petitioner sought asylum and remained in custody pending a Credible Fear Interview. *Id.*

5. On December 28, 2022, an asylum officer conducted a Credible Fear Interview, where he determined that Petitioner established a credible fear of persecution in Somalia. *Id.*

6. Two days later, on December 30, 2022, Petitioner was issued a Notice to Appear. Doc. 3-1 at 8-10. His Notice to Appear charged him as a noncitizen present in the United States without being admitted or paroled, or who arrived at any time or place other than as designated by the Attorney General. *Id.* at 8. The Notice to Appear also stated that it was "being issued after an asylum officer ha[d] found that [Petitioner] ha[d] demonstrated a credible fear of persecution or torture." *Id.* The Notice to Appear included a credible fear worksheet. *Id.* at 9.

7. Four days later, on January 3, 2023, the Department of Homeland Security ("DHS") paroled Petitioner into the United States pursuant to 8 U.S.C. § 1182(d)(5)(A). Doc. 3 ¶ 30.

8. DHS issued Petitioner an Interim Notice Authorizing Parole. Doc. 3-1 at 12. In the Notice, DHS stated that Petitioner's parole was valid "for one year beginning from the date on th[e]

[N]otice." *Id.* It also stated that Petitioner's parole would "automatically terminate upon [Petitioner's] departure or removal from the United States or at the end of the one-year period unless ICE provide[d] [him] with an extension at its discretion." *Id.* DHS also confirmed that Petitioner's parole could "be terminated at any time and for any reason." *Id.*

9. In the Notice, DHS also outlined Petitioner's parole conditions, which included, 1) notifying ICE and the Immigration Judge ("IJ") handling Petitioner's removal proceedings of any changes to his address; 2) attending his immigration hearings; 3) reporting for ICE check-ins; and 4) not violating any local, state, or federal laws. *Id.*

10. On May 4, 2023, Petitioner timely filed an Application for Asylum, Withholding of Removal, and for Withholding Under the Convention Against Torture. Doc. 3 ¶ 31.

11. On August 10, 2023, Petitioner received a defensive Asylum Receipt Notice from U.S. Citizenship & Immigration Services ("USCIS"). *Id.*

12. On August 30, 2023, Petitioner went to a USCIS office for a scheduled biometrics appointment. *Id.*; Doc. 3-1 at 18.

13. On November 1, 2023, Petitioner was issued an Employment Authorization Document, better known as a work permit, and a Social Security Number. Doc. 3 ¶ 32; Doc. 3-1 at 20-21. His work permit is valid through October 31, 2028. Doc. 3-1 at 20, 22.

14. Over the next few years, Petitioner obtained employment and worked as a commercial truck driver. Doc. 3 ¶ 32.

15. He also lived in the United States with his parole, which ICE continuously extended past January 3, 2024, the original end period, as evidenced by the fact that ICE did not re-detain Petitioner after the original end period, and, instead, continued to require him to comply

3

with his parole conditions. Petitioner complied with said conditions, including attending his immigration court hearings and scheduled ICE check-ins. *Id.* Petitioner also did not accrue any criminal history. *Id.*

16. In January 2026, Petitioner encountered CBP agents at an immigration checkpoint stop while working. *Id.* ¶ 33. CBP re-detained Petitioner without notice or explanation. *Id.*

17. Petitioner was eventually transported to Otero County Processing Center in Chaparral, New Mexico, where he remains detained. *Id.*

18. Petitioner's removal proceedings remain pending. Doc. 20 at 2.

On February 19, 2026, Petitioner filed his Habeas Petition. Doc. 3. In his Petition, Petitioner argues that his re-detention is governed by 8 U.S.C. § 1226, rather than 8 U.S.C. § 1225, because he was re-detained in the interior of the United States. *Id.* ¶¶ 34-65. Petitioner further argues that his re-detention violates the Due Process Clause. *Id.* ¶¶ 66-107. Petitioner specifically argues that his re-detention without notice and a meaningful opportunity to be heard violates his due process rights. *Id.* ¶ 85. He asks this Court to 1) grant his Habeas Petition; 2) declare that his detention is governed by § 1226 and not § 1225; 3) order Respondents to immediate release him from custody, or, in the alternative, order Respondents to provide him with a bond hearing in three (3) days; 4) enjoin Respondents from re-detaining him absent lawful statutory authority and compliance with constitutional requirements; 5) enjoin Respondents from transferring him outside of the District while his Habeas Petition remains pending; 6) enjoin Respondents from removing him from the United States during the pendency of his proceedings; 7) award him reasonable attorney fees and costs; and 8) grant such other relief as the Court deems just and proper. *Id.* ¶¶ 142-150.

That same day, Petitioner filed a Motion for Temporary Restraining Order ("TRO"). Doc.

5. In the Motion for TRO, Petitioner asked the Court to order Respondents to immediately release him from immigration custody under the same conditions that he was subject to prior to his re-detention. *Id.* at 16.

On March 3, 2026, the Court entered an Order to Show Cause ordering Respondents to respond to the Habeas Petition within ten (10) business days. Doc. 8 at 2. The Court also entered an Order Denying Petitioner's Motion for TRO, finding that a response from Respondents was necessary to resolve factual ambiguities in both the Habeas Petition and Motion for TRO. Doc. 7 at 2.

On March 12, 2026, USA Respondents filed their response to the Habeas Petition. Doc. 13. Warden Castro joined the Response. Doc. 10. In their response, Respondents expressly state that they do not challenge the Court's authority to review this Habeas Petition, or the "Court's jurisdiction over Petitioner's detention in Otero County." *Id.* at 7 n. 4. Respondents also do not dispute Petitioner's facts. *See id.* at 1-2. On the issue of whether Petitioner's detention is governed by § 1226 or § 1225, Respondents' position is that Petitioner's detention is governed by § 1225. *Id.* at 7. Respondents further argue that, at the time that Petitioner's parole was terminated, he was returned to the custody which he was paroled from, which was mandatory detention. *Id.* at 8. On the issue of notice, Respondents argue that Petitioner was re-detained because "ICE appears to have decided to cancel his parole." *Id.* at 8. Respondents acknowledge that Petitioner was not provided notice of the termination of his parole, including notice that he violated his parole conditions or other changed circumstances. *Id.*

On March 30, 2026, Petitioner filed a Second Motion for TRO. Doc. 17. In the Motion for TRO, Petitioner asks the Court to order Respondents to immediately release him from immigration custody. *Id.* at 25.

On April 2, 2026, Respondents filed their response in opposition to the Second Motion for TRO. Doc. 18.

On April 29, 2026, Petitioner filed a Motion for Judgment on the Pleadings. Doc. 20.

## II.
## LEGAL STANDARDS

Habeas relief is available when a person "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Petitioner seeks habeas relief, arguing that he was unlawfully re-detained by CBP agents after previously being paroled into the United States to seek asylum, in violation of the Due Process Clause.

The Due Process Clause of the Fifth Amendment prohibits the government from depriving any person of liberty without due process of law. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690, 121 S.Ct. 2491 (2001). The Due Process Clause's protections extend to all persons in the United States, including noncitizens, "whether their presence here is lawful, unlawful, temporary, or permanent." *Id.* at 693.

## III.
## DISCUSSION

### A. Petitioner's Detention Is Governed By 8 U.S.C. § 1225(b)(1)

The Immigration and Nationality Act ("INA") and its implementing regulations contemplate two detention regimes for noncitizens with pending removal proceedings. The first, 8 U.S.C. § 1225, governs noncitizens seeking admission, which includes those in expedited removal proceedings, *see* § 1225(b)(1), and certain other applicants for admission, *see* § 1225(b)(2). This first provision "mandates detention," *Requejo Roman v. Castro*, 816 F.Supp.3d

1267, 1275 (D.N.M. 2026), and affords no bond hearing, *Jennings v. Rodriguez*, 583 U.S. 281, 297, 138 S.Ct. 830.

The second provision, 8 U.S.C. § 1226, governs noncitizens already present in the United States "pending a decision on whether [they] are to be removed from the United States." § 1226(a). This second provision provides for discretionary detention, *see* § 1226(a), and, with limited exceptions for noncitizens with certain criminal charges, arrests, or the like, *see* § 1226(c), release on bond or conditional parole.

Here, Petitioner's facts indicate that he is in the expedited removal proceedings outlined in § 1225(b)(1). Petitioner entered the United States near Calexico, California, and, shortly after, encountered CBP, who detained him. Doc. 3 ¶ 28. CBP seemingly found Petitioner inadmissible and ordered him removed. *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108, 140 S.Ct. 1959 (2020) ("Once an immigration officer determines that a designated applicant is inadmissible, the officer must order the [noncitizen] removed from the United States without further hearing or review." (internal quotation marks and citation omitted)).

Petitioner, however, could still seek asylum. Under the proceedings outlined in § 1225(b)(1), if a noncitizen in expedited removal proceedings, "indicates either an intention to apply for asylum" or a "fear of persecution," the immigration officer "shall refer the [noncitizen] for an interview by an asylum officer." § 1225(b)(1)(A)(i)-(ii). The interview serves the purpose of determining whether the noncitizen has a "credible fear of persecution." § 1225(b)(1)(B)(v). This is exactly what occurred here. Petitioner sought asylum, and was referred for a Credible Fear Interview. Doc 3. ¶ 28.

If an asylum officer finds that the noncitizen has a credible fear of persecution, his asylum claim is then considered through a full removal proceeding. 8 C.F.R. § 208.30(f). The noncitizen,

however, "shall be detained" while his claim is being considered. § 1225(b)(1)(B)(ii). Here, an asylum officer found that Petitioner had established a credible fear of persecution in Somalia. Doc. 3 ¶ 28. Two days later, he was issued a Notice to Appear for consideration of his asylum claim through a full removal proceeding. Doc. 3-1 at 8-10. Indeed, Petitioner's Notice to Appear confirmed that it was "being issued after an asylum officer ha[d] found that [Petitioner] ha[d] demonstrated a credible fear of persecution or torture." *Id.* at 8. The Notice to Appear also included a credible fear worksheet. *Id.* at 9. Accordingly, as a noncitizen subject to expedited removal proceedings outlined in § 1225(b)(1), Petitioner is subject to mandatory detention pending consideration of his asylum claim. *See* § 1225(b)(1)(B)(ii).

Under § 1182(d)(5)(A), however, noncitizens subject to the expedited removal proceedings outlined in § 1225(b)(1), may be "temporarily released [into the United States] on parole for urgent humanitarian reasons or significant public benefit." *Jennings*, 583 U.S. 281 at 288 (internal quotation marks omitted). The regulations implementing § 1182(d)(5)(A) indicate that the noncitizen's classification does not change upon parole, or after termination of parole. Accordingly, it is likely that § 1225(b)(1)(B)(ii) continued to apply when Petitioner was paroled, and after the termination of that parole. Indeed, the regulations implementing § 1182(d)(5)(A) provide that, when parole is terminated or expires, the noncitizen "shall be restored to the status that he [] had at the time of parole." 8 C.F.R. § 212.5(e)(2)(i).

**B. Petitioner Did Not Receive Adequate Notice Terminating His Parole**

The Court next addresses whether Petitioner's re-detention and termination of parole violated his due process rights. Petitioner argues that his re-detention without notice and a meaningful opportunity to be heard violates his due process rights. Doc. 3 ¶ 85. Respondents do not address the issue of whether Petitioner was entitled to notice, although it appears that their

position is that Petitioner's parole was terminated, so he was not entitled to notice. Doc. 13 at 8. Respondents acknowledge that they did not provide Petitioner with notice, including notice that he violated his parole conditions or other changed circumstances. *Id.*

Under § 1182(d)(5)(A), a noncitizen must be returned to the custody from which he was paroled "when the purposes of such parole shall . . . have been served." Parole automatically terminates without written notice when the parole period expires or when the noncitizen departs the United States. 8 C.F.R. § 212…5(e)(1). If parole does not automatically terminate, then, if the purpose for the parole is accomplished or a designated official determines that "neither humanitarian reasons nor public benefit warrants the continued presence of the [noncitizen] in the United States, parole shall be terminated upon written notice to the [noncitizen]." *Id.* § 212.5(e)(2)(i).

The service of a charging document on the noncitizen may constitute sufficient written notice to terminate parole. *Id.* A charging document is defined as a "written instrument which initiates a proceeding before an" Immigration Judge ("IJ"). 8 C.F.R. § 244.1. This includes only "a Notice to Appear, a Notice of Referral to [IJ], and a Notice of Intention to Rescind and Request for Hearing by Alien." *Id.*

Here, Petitioner's parole was still active. The Interim Notice Authorizing Parole, dated January 3, 2023, outlined that Petitioner's parole was valid for one year "unless ICE provide[d] [him] with an extension at its discretion." Doc. 3-1 at 12. After January 3, 2024, the one year, ICE did not re-detain Petitioner. They, instead, for the next two years, continuously extended his parole and subjected him to the same parole conditions. Doc. 3 ¶ 32. Petitioner complied with said conditions. *Id.*

Moreover, there is no evidence that ICE had rescinded this extension of parole at any point

before Petitioner was re-detained. Nor is there even evidence that ICE rescinded the extension of parole at the immigration checkpoint stop. In January 2026, Petitioner encountered and was re-detained by CBP agents, and not ICE agents. While CBP and ICE are "both part of" DHS, they "are different agencies." *Immigration Enforcement Frequently Asked Questions*, U.S. IMMIGR. & CUSTOMS ENF'T, https://www.ice.gov/immigration-enforcement-frequently-asked-questions (last visited May 4, 2026); *see also Department Organizational Chart*, DEP'T OF HOMELAND SEC., https://www.dhs.gov/organizational-chart (last visited May 4, 2026). Petitioner had also not departed the United States. He was working in the United States. Doc. 3 ¶ 33. Petitioner was, therefore, entitled to written notice.

Respondents acknowledge they did not provide Petitioner with any notice, including notice that he violated his parole conditions or other changed circumstances. Doc 13 at 8. To the extent that they may now point to the Notice to Appear that they issued Petitioner following his Credible Fear Interview, that Notice to Appear is insufficient written notice. Like a Notice to Appear issued the same day as parole, a Notice to Appear issued just before parole "would render the notice requirement a nullity." *Alcide v. De Anda-Ybarra*, No. 1:26-cv-00249-KWR-GBW, 2026 WL 622663, at * 4 (D.N.M. Mar. 5, 2026).

### C. Respondents' Failure to Provide Adequate Notice Violates Petitioner's Procedural Due Process Rights

Courts analyze due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivations of that protected liberty interest accords with the Constitution. *See Ky. Dep't of Corrections v. Thompson*, 490 U.S. 454, 460, 109 S.Ct. 1904 (1989).

#### 1. Petitioner Possesses a Sufficiently Protected Liberty Interest

"Freedom from imprisonment—from government custody, detention, or other forms of

physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 U.S. at 690. The Due Process Clause's protections extend to all persons in the United States, including noncitizens, "whether their presence here is lawful, unlawful, temporary, or permanent." *Id.* at 693. However, under the "entry fiction," noncitizens who enter the United States, are detained shortly thereafter, and placed in expedited removal proceedings, remain "on the threshold," i.e., as "if stopped at the border." *Thuraissigiam*, 591 U.S. at 139-140 (internal quotation marks and citations omitted). This is because such noncitizens "cannot be said to have effected an entry." *Id.* at 140 (internal quotation marks omitted). Nevertheless, such noncitizens are at least entitled to the "minimal procedural due process rights for an opportunity to be heard at a meaningful time and in a meaningful manner," *Sosa-Valenzuela v. Holder*, 692 F.3d 1103, 1112 (10th Cir. 2012). Beyond this procedural minimum, to create a liberty interest, a statute or regulation must "substantively limit the exercise of official discretion through specifically defined criteria that limit decision making." *Id.*

Here, 8 C.F.R. § 212.5(e), a regulation, specifically limits termination of parole to two situations: 1) automatic termination upon the noncitizen's expiration of his parole or departure from the United States; or 2) written notice. As mentioned above, Petitioner's parole was still active when he was re-detained, and he had not departed the United States. Thus, in accordance with the regulation, Petitioner's parole needed to be terminated upon written notice. As discussed above, Petitioner did not receive adequate written notice terminating his parole prior to being re-detained. Petitioner, therefore, possesses a sufficiently protected liberty interest.

### 2.  Written Notice Was Required Before Petitioner Was Re-Detained

Having found that Petitioner possesses a sufficiently protected liberty interest, the Court next examines what process is necessary to ensure any deprivation of that protected interest

accords with the Constitution. To make this determination, the Court considers the three factors outlined in *Mathews v. Eldridge*: 1) "the private interest that will be affected by the official action," 2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," and 3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. 319, 335, 96 S.Ct. 893 (1976).

Turning to the first *Mathews* factor, even assuming that Petitioner's protected liberty interest only extends as far as Congress granted by regulation, Petitioner still has a significant interest in his parole being terminated in accordance with regulatory procedures. Termination upon written notice to him after one of the specified determinations in 8 C.F.R. § 212.5(e)(2)(i) is his only procedural safeguard. *See United States v. Lagarda-Aguilar*, 617 F.2d 527, 528 (10th Cir. 1980) (holding that because the "requirement of written notice is the only safeguard . . . written notice is essential to effectuate a termination").

With respect to the second *Mathews* factor, the Court also finds that the risk of erroneous deprivation in this case is considerable, particularly here, where Petitioner was not provided with any adequate written notice, his only procedural safeguard.

Finally, the Court finds that the third *Mathews* factor favors Petitioner as well. Requiring Respondents to adhere to the written notice requirement would not cause substantial fiscal or administrative concerns.

On balance, the Court finds that under the three *Mathews* factors, Petitioner should have received a sufficient written notice terminating his parole prior to being re-detained.

12

**D. Immediate Release is the Appropriate Remedy**

Federal district courts have broad equitable powers to craft habeas relief. *Burton v. Johnson*, 975 F.2d 690, 693 (10th Cir. 1992). District courts have the power and authority to dispose of habeas corpus matters "as law and justice require." 28 U.S.C. § 2243. The Court finds that, due to the lack of adequate written notice violating the Petitioner's due process rights, the appropriate remedy in this habeas case is immediate release. *See Munaf v. Geren*, 553 U.S. 674, 693, 128 S. Ct. 2207 (2008) ("Habeas is at its core a remedy for unlawful executive detention . . . [and] [t]he typical remedy for such detention is, of course, release.") (citing *Hamdi v. Rumsfeld*, 542 U.S. 507, 536, 124 S.Ct. 2633 (2004); *Preiser v. Rodriguez*, 411 U.S. 475, 484, 93 S.Ct. 1827 (1973)); *see also Alcide*, 2026 WL 622663, at *8.

**IV.**
**CONCLUSION**

For the reasons stated above, Petitioner's Petition for Writ of Habeas Corpus (Doc. 3) is **GRANTED**.

**IT IS THEREFORE ORDERED** that Respondents release Petitioner within **twenty-four (24) hours** of this Order under the same conditions that were in place before his re-detention in January 2026.

**IT IS FURTHER ORDERED** that Respondents are **RESTRAINED** from re-detaining Petitioner again absent written notice terminating his extended parole in accordance with 8 C.F.R. § 212.5(e)(2)(i).

**IT IS FURTHER ORDERED** that the parties submit a joint status report to the Court no later than Thursday, May 7, 2026, confirming Petitioner's timely release.

Finally, because the Court is ruling on Petitioner's Habeas Petition and granting him relief in this Order, Petitioner's Motion for Judgment on the Pleadings (Doc. 20) and Second Motion for TRO (Doc. 17) are **DENIED AS MOOT**.

    **IT IS SO ORDERED.**

_____
HONORABLE DAVID HERRERA URIAS
UNITED STATES DISTRICT JUDGE